UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

**NOT FOR PUBLICATION**

| In Re: | Case No.: | 20-21419-ABA |
| --- | --- | --- |
| Charles A. Budd, Jr., | Chapter: | 13 |
| Debtor. | Judge: | Andrew B. Altenburg, Jr. |

### MEMORANDUM DECISION

Before the court is the remaining portion of a motion to object to claims of Darlene Budd ("Darlene") by the Debtor, Charles A. Budd, Jr. ("Debtor"). The court previously ruled that Darlene's claim was not entitled to priority status as a domestic support obligation under 11 U.S.C. § 101(14A) but rather was in the nature of equitable distribution and allowed as a general unsecured claim. What remains to be determined is at what amount the claim must be fixed. The Debtor argues that Darlene's claim must be limited to only those installments that came due within New Jersey's six-year statute of limitations period to enforce a contract — $13,760. Darlene argues that the six-year statute of limitations period does not apply and therefore she is entitled to the full amount of her filed claim — $83.916.65.[1] For the reasons that follow, the court finds that the six-year statute of limitations period does not apply and Darlene is entitled to a general unsecured claim fixed in the amount of $83,916.65.

### JURISDICTION AND VENUE

This matter before the court is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B) and (O), and the court has jurisdiction pursuant to 28 U.S.C. § 1334, 28 U.S.C. § 157(a) and the Standing Order of Reference issued by the United States District Court for the District of New Jersey on July 23, 1984, as amended on September 18, 2012, referring all bankruptcy cases to the bankruptcy court. The following constitutes this court's findings of fact and conclusions of law as required by Federal Rule of Bankruptcy Procedure 7052.

### PROCEDURAL HISTORY

The Debtor filed a Motion to Object to Claims of Darlene Budd. Doc. No. 40. Darlene filed a response. Doc. No. 49. The court conducted a plenary hearing, and when it concluded, the court made its ruling and issued an *Order Fixing Claim, In Part*. Doc. No. 54. The court held that Darlene's claim was not entitled to priority status as a domestic support obligation under 11 U.S.C. § 101(14A) but rather was in the nature of equitable distribution, and it allowed that claim as a

---

[1] It should be noted that each of the parties conceded during the plenary hearing that if the other party was correct in their position, the amount they claimed owed was correct. In other words, the parties do no dispute what the other party claims due if that party is successful on the issue presented to the court.

general unsecured claim. Because the parties dispute the amount of the claim, the court ordered them to file further briefs. As the parties have made their submissions, this matter is now ripe for disposition.

## FINDINGS OF FACT

The parties do not dispute that the Debtor did not make any payments to Darlene after 2009, and further, only paid a total amount of $14,083 in equitable distribution to Darlene under the PSA, leaving the balance of $83,916. They also do not dispute that Darlene did not seek to enforce Debtor's obligations to her prior to his filing this bankruptcy case.

## DISCUSSION

On September 22, 2008, a final judgment of divorce was granted to the Debtor and Darlene by the Superior Court of New Jersey (the "Judgment of Divorce"). The parties' disagreement centers on the meaning of language in the Judgment of Divorce stating that their Matrimonial Property Settlement Agreement ("PSA") would be "incorporated by reference into this Final Judgment of Divorce. Said Property Settlement Agreement shall not merge herewith, but shall survive the entry of this Judgment." Hearing exhibit C-1, Judgment of Divorce, p. 2.

The parties' PSA provided:

**ARTICLE XIII: NON-MERGER AND NON-INTERFERENCE**

A. This Agreement may be offered into evidence in any divorce proceeding instituted by either of the parties in a Court of competent jurisdiction and shall, subject to the approval of the Court and the laws of that jurisdiction, **be incorporated in any Judgment of Divorce** which may be entered therein. This agreement, however, shall not be invalidated or otherwise affected by any such Judgment of Divorce and the obligations **and covenants of this Agreement shall survive any such Judgment**. The party obtaining a divorce decree shall not incorporate, attempt to incorporate or cause to be incorporated any provision in such decree contrary to, or at variance with the terms of this Agreement, nor will either party attempt to enforce any Judgment which is contrary to, or at variance with the provisions hereof . . .

*Id*. at p. 12 (emphasis added).

Debtor argues that the PSA is a contract separate and distinct from the Judgment of Divorce, and therefore the equitable distribution payments that he owed to Darlene were subject to the six-year statute of limitations under N.J.S.A § 2A:14-1 for enforcing contracts. N.J.S.A § 2A:14-1 states that every action at law "for recovery upon a contractual claim or liability, express or implied, not under seal or upon an account other than one which concerns the trade or merchandise between merchant and merchant, their factors, agents, and servants, shall be commenced within 6 years next after the cause of any such action shall have accrued." N.J. Stat. Ann. § 2A:14-1 (West). As Darlene did not seek any type of enforcement action against Debtor prior to his filing for bankruptcy, the only equitable distribution payments owed to her are those that became due within the six years prior to his bankruptcy case, i.e., $13,760.

Darlene contends that by incorporating the PSA into the Judgment of Divorce, it became a part of the Judgment of Divorce governed by N.J.S.A § 2A:14-5 which states that" a judgment in any court of record in this state may be revived by proper proceedings or an action at law may be commenced thereon within 20 years next after the date thereof but not thereafter. An action may be commenced on a judgment obtained in any other state or country within 20 years next after the date thereof or within the period in which a like action might be brought thereon in that state or country, whichever period is shorter, but not thereafter." N.J. Stat. Ann. § 2A:14-5 (West).

This court first acknowledges that it found no cases directly on point in New Jersey. However, it notes that New Jersey has a strong public policy favoring the enforcement of settlement agreements in marital litigation as part of its equity jurisdiction. This has been upheld in a long line of decisions by the New Jersey Supreme Court where they have "emphasized repeatedly that matrimonial agreements between spouses relating to [equitable distribution], alimony and support, which are fair and just, fall within the category of contracts enforceable in equity." *Petersen v. Petersen,* 85 N.J. 638, 642, 428 A.2d 1301 (1981) (citing *Carlsen v. Carlsen,* 72 N.J. 363, 370–71, 371 A.2d 8 (1977)); *Berkowitz v. Berkowitz,* 55 N.J. 564, 569, 264 A.2d 49 (1970); *Schlemm v. Schlemm,* 31 N.J. 557, 581–82, 158 A.2d 508 (1960)); *Thompson v. Thompson*, No. A-5690-04T1, 2005 WL 3803005, at *3 (N.J. Super. Ct. App. Div. Jan. 27, 2006) ("our Supreme Court has 'emphasized repeatedly that matrimonial agreements between spouses relating to [equitable distribution], alimony and support, which are fair and just, fall within the category of contracts enforceable in equity'."). It is generally beneficial for the courts to enforce property settlement agreements, as they are usually entered into consensually and voluntarily and are entitled to "considerable weight with respect to their validity and enforceability notwithstanding the fact that such an agreement has been incorporated in a judgment of divorce." *Peterson* at 1303.

What is more, courts have held that these agreements, when incorporated into a divorce order, can be modified "in light of all the facts" depending on what is "equitable and fair." *Smith v. Smith*, 72 N.J. 350, 360, 371 A.2d 1 (1977). Therefore, "contract principles have little place in the law of domestic relationships." *Lepis v. Lepis*, 83 N.J. 139, 148, 416 A.2d 45 (1980). The courts have further held that the incorporation of a marital property settlement agreement into a divorce decree "does not render it immutable, nor its terms solely governed by contract law, nevertheless, if found to be fair and just, it is specifically enforceable in equity." *N.H. v. H.H.,* 418 N.J. Super. 262, 279–80, 13 A.3d 399, 409 (App. Div. 2011) (citing *Eaton v. Grau*, 368 N.J. Super. 215, 224, 845 A.2d 707 (App. Div. 2004)). Accordingly, although courts have recognized the importance of the contractual nature of property settlement agreements, it is clear that they are distinguishable from ordinary contracts that would be governed by principles of contract law. Marital property settlement agreements incorporated into a judgment of divorce are specifically enforceable in equity, and family courts possess the authority to modify privately negotiated property settlement agreements. *Conforti v. Guliadis,* 128 N.J. 318, 323, 608 A.2d 225 (1992).

The distinction between ordinary contracts and marital property settlement agreements is also apparent in considering the rules governing actions in family court. The New Jersey Statute and Rules Governing Practice in Chancery Division, Family Part, Rule 5:1 state that: "the rules in Part V [Rules Governing Practice in the Chancery Division, Family Part] shall govern family actions. All family actions shall also be governed by the rules in Part I [Rules of General Application] insofar as applicable. Civil family actions shall also be governed by the rules in Part IV [Rules Governing Civil Practice in the Superior Court, Tax Court and Surrogate's Courts] insofar as applicable and except as otherwise provided by the rules in Part V. Criminal and quasi-

criminal family actions shall also be governed by the rules in Part III insofar as applicable except as otherwise provided by the rules in Part V. […]." NJ R CH DIV FAM PT R. 5:1-1. This is further demonstrated in Rule 5:1-2(a) which lists which actions are cognizable in the Family Part. It states, "All actions in which the principal claim is unique to and arises out of a family or family-type relationship including palimony actions, shall be filed and heard in the Chancery Division, Family Part. Such actions shall include all actions and proceedings referenced in Chapters II [Specific Civil Actions] and III [Families in Crisis] of Part V, unless otherwise provided in Rule 4:3-1(a) […]." NJ R CH DIV FAM PT R. 5:1-2(a). Thus, the Superior Court's Family Part retains jurisdiction over any action that arises out of a familial relationship or dispute, including the modification or enforcement of the terms and provisions of a marital property settlement agreement incorporated into a final judgment of divorce.

Darlene relies on Rule 4:50-1 to support her argument that the PSA is not a standalone contract but is part of the Judgment of Divorce. A party seeking to modify or vacate the terms or provisions of a property settlement agreement incorporated into a final judgment must file a motion for relief from final judgment under Rule 4:50-1. The rule provides relief from a final judgment for "(a) mistake, inadvertence, surprise or excusable neglect; …or (f) any other reason justifying relief from the operation of the judgment or order." N.J. Ct. R. R. 4:50-1. Darlene argues that if the PSA operates as a standalone contract, there would be no need to file a motion for relief under Rule 4:50-1 to modify the terms or provisions of the PSA.

New Jersey courts have held that Rule 4:50-1 governs the modification of the equitable distribution provisions of a property settlement agreement incorporated into a final judgment of divorce. *See Harrington v. Harrington*, 281 N.J. Super. 39, 48, 656 A. 2d 456, 460-61 (App. Div. 1995). The court in *Harrington* noted that obtaining relief under Rule 4:50-1 usually requires proof of "exceptional and compelling" circumstances, as the rule was designed to balance the interests of "finality of judgments and judicial efficiency against the interest of equity and fairness." *Id*. The courts are reluctant to grant relief under Rule 4:50-1 for modification of a marital property settlement agreements that has been incorporated into a final judgment unless there is compelling evidence that shows that the terms or provisions of the agreement go against the interest of equity and fairness. If marital property settlement agreements could operate as standalone contracts, the parties would not have to seek relief from the Family Part to modify the terms and provisions of the agreement. In contrast, modification of a contract does not require recourse to the courts. *Elliott & Frantz, Inc. v. Ingersoll-Rand Co.*, 457 F.3d 312, 322 (3d Cir. 2006) ("Under New Jersey law, parties to an existing contract, by mutual assent, may modify their contract. . . .").

Rule 1:10-3 further supports the premise that a property settlement agreement that has been incorporated into a final judgment does not operate as a standalone contract under New Jersey law. The rule sets forth the process for enforcing the terms and provisions of a settlement agreement that has been incorporated into a final judgment by filing a motion to enforce a litigant's rights. Rule 1:10-3 states in part that, "Notwithstanding that an act or omission may also constitute a contempt of court a litigant in any action may seek relief by application in the action. . . . If an order entered on such an application provides for commitment, it shall specify the terms of release provided, however, that no order for commitment shall be entered to enforce a judgment or order exclusively for payment of money, except for orders and judgments based on a claim for equitable relief including orders and judgments of the Family Part and except if a judgment creditor demonstrates to the court that the judgment debtor has assets that have been secreted or otherwise placed beyond the reach of execution […]." N.J. Ct. R. 1:10-3.

Debtor argues that the non-merger language contained in the PSA and Judgment of Divorce "plainly evidence an intent by the parties and the Court that the property settlement agreement maintain its legal significance as a contract, unaffected by any judgment of divorce." Doc. No. 58, p. 9, ¶ 25. But the Debtor did not cite to any cases, nor did this court find any, in which a property settlement agreement that was "incorporated but not merged" into a final judgment of divorce meant that the property settlement agreement was "unaffected by any judgment of divorce." In fact, it is plainly evident that the opposite is true, and New Jersey courts continue to exercise jurisdiction and control in the enforcement and modification of property settlement agreements after a final judgment of divorce has been entered and usually through Rule 4:50–1. *See Cancialosi v. Cancialosi,* No. A-3333-09T4, 2012 WL 469740, at *1 (N.J. Super. Ct. App. Div. Feb. 15, 2012) (husband cross-moved to vacate the PSA under Rule 4:50–1) and *Harrington v. Harrington*, 281 N.J. Super. 39, 48 ("Modification of the equitable distribution provisions of the property settlement agreement here is governed by *R.* 4:50–1(f).).

There are other jurisdictions that have held that property settlement agreements that are "incorporated but not merged" into a final judgment operate as a standalone contract, and in those states there are methods to enforce property settlement agreements that have not merged with a final judgment of divorce. However, New Jersey has no similar statute or case law that indicates that a property settlement agreement that is "incorporated but not merged" into a final judgment operates as a standalone contract. In fact, in New Jersey, the non-merger language used in Debtor's PSA and Judgment of Divorce is standard boilerplate language used by many attorneys when drafting property settlement agreements and judgments. In the New Jersey Pleading and Practice Forms, a form for a final judgment of divorce contains similar language to the Judgment of Divorce in this present case. The relevant section of this form states that:

> "it is further ordered that the property settlement agreement executed by the plaintiff on *[date of execution]*, and by the defendant on *[date of execution]*, is made a part of this final judgment of divorce by reference and **will not merge with but will survive this final judgment of divorce**; and the parties are directed to comply with the terms of that agreement. This court specifically notes, however, that it has not taken testimony as to the merits of this agreement, but merely finds that the parties entered it into freely and voluntarily. A copy of the property settlement agreement is attached to this final judgment of divorce as Exhibit *[designation of exhibit]*."

5 N.J. Pl. & Pr. Forms § 41:190. (West).

The forms contained in the New Jersey Pleading and Practice Forms are adapted from submissions from practicing attorneys in the State of New Jersey. As such, it is reasonable to assume that the inclusion of the non-merger language in a property settlement agreement or a judgment of divorce is part of standard drafting practice and does not necessarily signal the intent that the parties and the court intend for the property settlement agreement to operate as a separate contract outside of the final judgment.

This is further supported by the language contained in the judgment of divorce in the case of *Shea v. Shea*, where the parties had agreed in April 2002 to a consent order regarding the custody and support of their children and equitable distribution. *Shea v. Shea*, No. A-1732-10T1, 2011 WL 5374996, at *1 (N.J. Super. Ct. App. Div. Nov. 9, 2011). There the court entered an amended dual

final judgment of divorce on April 28, 2004 that provided that the April 2002 consent order "is hereby made a part of this judgment of divorce, and **shall not merge with, but shall survive this judgment of divorce**; and the parties are hereby directed to comply with the terms of the same." *Id.* (emphasis added). In that case, the former wife filed a motion in the New Jersey Family Part Court in 2010 seeking an order confirming that New Jersey no longer had jurisdiction over the case as she and her children had relocated to Montana in 2002. The ex-husband then filed a cross-motion seeking reimbursement of travel expenses associated with the children's travel in accordance with the consent order as incorporated into the judgment of divorce. The ex-wife responded that New Jersey no longer had jurisdiction and could not rule on the ex-husband's cross-motion. *Id.* The Family Part court found that although the former spouse and children had resided in Montana for eight years and that the parties had agreed to transfer jurisdiction to Montana, until Montana accepted jurisdiction over the case, New Jersey still had jurisdiction and could rule on the ex-husband's cross-motion. *Id*. at 2. The Superior Court upheld the Family Part's holding. Although the facts in *Shea* differ from the facts in this case, it is clear that the use of the phrase "shall not merge herewith," or similar phrases, is standard language used by attorneys in the drafting of judgments of divorce. It does not mean that the property settlement agreement operates as a separate contract. In fact, Debtor's contention that both the parties and the court intended for the PSA to maintain a separate legal significance as a standalone contract "unaffected" by any judgment is contrary to the clearly established public policy of New Jersey courts that property settlement agreements incorporated into a judgment of divorce are enforceable in equity, and family courts possess the authority to enforce or modify privately negotiated property settlement agreements.

Furthermore, Debtor's reliance on the "merger doctrine" in the context of this court's holding in *In re Goione* is misplaced. *See In re Goione*, 595 B.R. 477, 483 (Bankr. D.N.J. 2019). This is because the merger doctrine in that context is specific to the merger of a mortgage into a final judgment of foreclosure. This is not applicable to the issue in this case involving family law. Debtor's arguments that Darlene's claim for equitable distribution payments are limited to the six-year statute of limitations governing contracts is without merit as it is evident that marital property settlement agreements incorporated into a judgment of divorce are not truly contractual, they are a judgment that is enforceable by the Family Part so long as the judgment is enforceable.

## CONCLUSION

Accordingly, Debtor's Motion to Fix the Amount of Darlene Budd's Claim at $13,760 is denied. Darlene's claim is fixed and allowed in the amount of $83,916.65.[2]

An appropriate judgment has been entered consistent with this decision.

Dated: June 7, 2021

/s/ Andrew B. Altenburg, Jr.
United States Bankruptcy Judge

---

[2] In the end, all of this is merely academic. Debtor has proposed a plan that provides for a minimal *pro rata* distribution to general unsecured claimants if there are funds sufficiently available after payment of priority claims. The court suspects that administrative expenses and priority claims will prevent a meaningful distribution to general unsecured claims.