UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

| In Re: | Case No.: | 20-21419-ABA |
|---|---|---|
| Charles A. Budd, Jr., | Chapter: | 13 |
| Debtor. | Judge: | Andrew B. Altenburg, Jr. |

## MEMORANDUM DECISION

This matter is before the court on confirmation of the Debtor Charles A. Budd's most recent modified plan and the objections of creditor, Darlene Budd ("Darlene") and the Chapter 13 Trustee (the "Trustee"). Based upon credibility of the Debtor, the testimony provided, the evidence submitted, and the arguments of the parties, the court finds that the Debtor has not met his burden of demonstrating what his projected monthly disposable income actually is and consequently, the court cannot confirm his proposed plan under section 1325(b)(1) of the Bankruptcy Code.

## JURISDICTION AND VENUE

This matter before the court is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(L) and (O), and the court has jurisdiction pursuant to 28 U.S.C. § 1334, 28 U.S.C. § 157(a) and the Standing Order of Reference issued by the United States District Court for the District of New Jersey on July 23, 1984, as amended on September 18, 2012, referring all bankruptcy cases to the bankruptcy court. The following constitutes this court's findings of fact and conclusions of law as required by Federal Rule of Bankruptcy Procedure 7052.

## BACKGROUND

On August 2, 2021, the Debtor filed his Second Modified Chapter 13 Plan (the "Plan"). (Doc. No. 69). The Trustee filed objections to the Debtor's expenses for purposes of determining the Debtor's projected disposable income. (Doc. Nos. 73 and 88). Darlene also filed objections to confirmation of the Plan centering on the Debtor's purported projected disposable income. (Doc. Nos. 47 and 89). A plenary confirmation hearing began on November 10, 2021, but due to the Debtor's inability or difficulty with complying with or utilizing the court's Zoom procedures, the hearing was continued to December 6, 2021 to allow the parties to appear in court in person. At that time, with all parties present, the court took testimony from the Debtor and the witnesses, Brian Budd and Donna Guzzo.[1] At the conclusion of the hearing, the court closed the record[2] but

---

[1] No other witnesses were presented.

[2] After the record was closed and without leave, on January 18, 2022, the Debtor filed amended I & J schedules and filed a brief in support of plan confirmation. (Doc. No. 103). But the amendments cannot be considered since the

permitted the parties to submit post-trial briefs on the evidence presented. The parties made their submissions (Doc. Nos. 100, 102 and 104) and the matter is now ripe for consideration.

### DISCUSSION[3]

The Plan proposes payments of $600 a month for 60 months for a total of $36,000 in payments. With the bar date having passed, it is undisputed that the general unsecured claims in this case total $245,282. (Doc. No. 100, p.6). The Trustee's commission will exceed $3,000, *Id*., and with multiple contested hearings, the Debtor's attorneys fees will surely far exceed the customary fee of $4,750[4] for chapter 13 cases, resulting in a diminished distribution, if any, to unsecured creditors. Darlene is the largest unsecured creditor in the case.

As stated above, the objections center around the Debtor's purported income and expenses, and in particular, whether the Debtor has committed all of his projected disposable income to fund the Plan. The Trustee and Darlene argued that the Debtor's income has increased significantly since his bankruptcy petition and that his Schedule J does not accurately reflect his actual expenses, enabling the Debtor to pay his general unsecured creditors more.

As in all cases, we start with the statute. In order to confirm a plan, a Debtor must satisfy the requirements of section 1325. Relevant here is section 1325(b)(1) which provides:

> (b)(1) If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan—
>
> (A) the value of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or
>
> (B) the plan provides that all of the debtor's projected disposable income to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan.

11 U.S.C.A. § 1325(b) (West). Since the Trustee and the largest unsecured creditor here have objected to the Plan, confirmation cannot be had unless section 1325(b)(1) is satisfied. At the inception of the in-person confirmation hearing, the court ruled that the Debtor cannot satisfy subsection (b)(1)(A) because the Debtor's Plan proposes a *pro-rata* distribution, if any, to all

---

record was closed on December 6, 2021. A court may consider the submission of additional evidence after trial only upon appropriate motion to reopen the record. *In re Dryden Advisory Grp., LLC*, No. 1:15-BK-00545MDF, 2015 WL 3783653, at *1 (Bankr. M.D. Pa. June 15, 2015) (citing *Zenith Radio Corp. v. Hazeltine Research, Inc.,* 401 U.S. 321, 331 (1971)); *Rochez Brothers v. Rhoades,* 527 F.2d 891, 894 n. 6 (3d Cir. 1975).

[3] Except as otherwise noted, the court fully incorporates the Statement of Facts set forth in the Trustee's post-trial submission (Doc. No. 100-1) as these facts were all proven and supported by the evidence at confirmation.

[4] The Debtor's attorney's approved fees thus far have already exceeded $22,000.

general unsecured creditors in this case. Consequently, section 1325(b)(1)(A) does not apply. Hence, the Debtor must proceed under section 1325(b)(1)(B) which requires the court to determine whether the Debtor has committed all of his projected disposable income under the Plan.

Darlene and the Trustee, as the parties objecting to confirmation, bear the initial burden of presenting by a preponderance of the evidence that the Plan does not satisfy section 1325(b).[5] However, the ultimate burden of persuasion rests with the Debtor to show the Plan's compliance with the "disposable income" requirement. *In re McGilberry*, 298 B.R. 258, 261 (Bankr. M.D. Pa. 2003). *See also In re Aquino*, 630 B.R. 499, 547 (Bankr. D. Nev. 2021) ("the applicable burden of proof is a shifting one."). When calculating a debtor's projected disposable income, the Supreme Court in *Hamilton v. Lanning*, 560 U.S. 505, 130 S. Ct. 2464, 177 L. Ed. 2d 23 (2010), held that the phrase "projected disposable income" within the meaning of §1325(b)(1) is the same as "disposable income" as defined in § 1325(b)(2) (i.e. the debtor's current monthly income less reasonably necessary expenses multiplied by the length of the applicable commitment period). What is more, the Court further held that the statute is not "mechanical," and a bankruptcy court has discretion in determining projected disposable income and may consider income or expenses that are known or virtually certain at the time of confirmation. *Id*. at 2475. Finally, since the Debtor has committed himself to make equal payments of $600 a month for a 5-year payment period, the court need not make a determination of the applicable payment period.

Darlene and the Trustee bore the initial burden of proving by a preponderance of the evidence that Plan does not satisfy section 1325(b). The natural starting point was the Debtor's own petition and schedules (which even the Debtor relied on in support of confirmation of his Plan). A review of the Debtor's initial and amended schedules shows that the Trustee and Darlene have easily met their burden through their objections. First, the Debtor sold his residence thereby eliminating his mortgage payment but provided the Trustee with no evidence of why he continued to make a mortgage or rent payment in the amount of $2,000 per month. The Debtor's expenses for food and housekeeping expenses are $320 above the national standards. The Debtor did not provide any documentation to support health insurance costs increasing from $0 to $875, let alone totaling $875 per month.[6] The Debtor's schedules list a projected monthly car payment without having a car. Likewise, the Debtor listed an expense for car insurance when there apparently is no vehicle.

Nevertheless, at confirmation, Darlene and the Trustee in furtherance of meeting their burden first called the Debtor to the stand. They were prepared through their examination of the Debtor and witnesses and the exhibits provided, Darlene and the Trustee were able to establish that the Debtor's projections of disposable monthly income, and the Debtor's actual income and expenses as reflected on I and J, were not accurate and indeed, convinced the court that the *Debtor himself may not even know what his projected monthly disposable or actual income is*. Without question, as will be discussed below, Darlene and the Trustee through their examination of the exhibits, the Debtor and others, met their burden under section 1325(b)(1)(B).

---

[5] While the Trustee filed her own objection, she has let Darlene to take the lead in prosecuting the objection as their interests and objections are aligned.

[6] The debtor's testimony at confirmation reflects that his actual expense for health insurance was significantly less.

Shifting to the Debtor's burden of persuasion to prove his disposable income, the court first notes that it found the Debtor unprepared, did not find his testimony credible in his explanations, and found his answers, elusive, evasive, and surely confusing at times. Perhaps this was his planned strategy or maybe he truly does not know his financial status. However, the only thing that the Debtor was successful at achieving through his testimony was convincing the court that *it* cannot determine whether the Debtor has committed all of his projected disposable income under the Plan as required by section 1325(b)(1)(B) or whether his Schedules I and J are accurate. Without the ability to do so, the Debtor has failed in his burden and confirmation must be denied.

Examples of how the Debtor failed to meet his burden are abundant in the record and post-trial submissions.[7] The Debtor testified that he does not know what his monthly income is from Power Washing Pro and that he will not know until the end of the year when his accountant tells him what he has made, but that he estimates that it is about $6,500 a month.[8] Then, post-trial, the Debtor states that "he hopes and projects that he will have future gross income from Power Washing Pro of $6,500 per month ($5,500 after taxes)." (Doc. No. 104, p. 5 ¶ xiv). However, nothing the Debtor has provided demonstrates a basis for determining this amount, which is especially troubling since the Debtor maintains that he received no income from Power Washing Pro in 2020.[9]

Moreover, the Debtor's testimony directly contradicted his schedules. On October 22, 2021, the Debtor filed Amended I & J Schedules. (Doc. No. 81). On these schedules, the Debtor listed his gross income as $6,500 a month from Retail Printing Group but testified at confirmation that he has not earned any income from Retail Printing Group in 2021 and that it is essentially defunct. When questioned about the various deposits and transfers between his personal bank account and different bank accounts, including Retail Printing Group, Debtor's explanations were vague and merely stated that he would transfer money between different accounts to keep those accounts afloat.[10] This, despite the assertion that Retail Printing Group along with some of his other businesses are defunct.[11] In short, the Debtor's confused and incomplete answers made it

---

[7] As there are more preponderant failures to address, the court will not address the Debtor's explanations with regard to his insurance expenses, other business interests or tax returns, but only to say that the court did not find the Debtor credible in his explanations of these items, provided little evidentiary support and/or that his testimony concerning these expenses or interests and/or the evidence presented showed that they were inaccurate—sufficient for the court to find that the Debtor has not committed all of his projected monthly income under the Plan as required by the statute.

[8] *See* Trial Recording ("TR") from November 10, 2021 at 2:58 p.m. and December 6, 2021 at 11:22 a.m. In fact, the Debtor repeatedly throughout the course of the confirmation hearing stated that he relies on his accountant to tell him what his income is at the end of the year. Clearly, the Debtor does not understand his income and solely relies on that professional to determine income. One wonders then, why there was no accountant presented to support the Debtor's projections?

[9] *See* Debtor's Post-Trial Brief (Doc. No. 104, p. 4 ¶ iii).

[10] Incorporated fully herein is Darlene's post-trial submission which incorporates the testimony and exhibits produced at trial concerning the transfers in and out of the various accounts. Doc. No. 102, pp. 3-7.

[11] *See* TR from November 10, 2021 at 2:16 p.m. and December 6, 2021 at 11:18 a.m.

impossible for the court to make a reasonable determination as to whether the Debtor has committed all of his projected disposable income under § 1325(b)(1)(B).

The Debtor seemed to suggest that his income from Power Washing Pro will be similar to what he received from Retail Printing Group. However, Debtor provided no such evidence. What is more, the testimony of his son and business partner in Power Washing Pro, Brian Budd, did not support such a finding. Brian testified that Power Washing Pro's income in 2021 was "substantially different" than in prior years due to a substantial contract they received from Cooper Medical Center.[12] Power Washing Pro also just secured a job with the City of Philadelphia.[13] Might the Debtor receive a higher income due to these lucrative contracts? Might the Debtor's income decrease? Seems like this would be something known or virtually certain at the time of confirmation – but it's not. The only thing that is clear is that the Debtor intends to take only $6,500 a month from this entity no matter what.

Also very troubling is the complete lack of corporate formality which makes it nearly impossible to determine the Debtor's true income. Certainly, his testimonial explanations at confirmation of the multiple transfers[14] in and out of his various personal and business accounts he controls, some very substantial, as further demonstrated by his post-trial submission, at best, lacked basis and clarity. They might be loans, they might be accounts receivables, they might be income – or not, they might be benefits, they might be expenses, or they might be something else entirely. The Debtor's bewildering testimony and/or evidence (or lack thereof) did not support his position. What was shown is that the Debtor is running money in and out of the various accounts at his discretion without any evidence of accountability and apparently, true understanding. And, while the Debtor listed some of his corporate entities as "d/b/a" on his petition, this does not make those separate corporate entities a joint-debtor in this case, or a debtor in any case, and certainly does not afford the Debtor the opportunity to abandon corporate formalities. To the court, this shows either a purposeful attempt to manipulate income or that the Debtor truly does not understand his income. Either way, it makes it impossible for the court to make a reasonable determination as to whether the Debtor has committed all of his projected disposable income under section 1325(b)(1)(B).

When questioned about the expenses listed on his Schedule J and asked about which bank account he used to pay these expenses, the Debtor admitted that he uses the Power Washing Pro account to pay his cell phone, car insurance, and health insurance costs and that he was not actually personally paying these expenses.[15] Debtor then explained, without proof, that whatever personal expenses that Power Washing Pro paid on his behalf would be taken out of his income at the end of the year. So how can the court determine projected disposable income? How can it determine what income or expenses are known or virtually certain in making that determination? This

---

[12] Incredibly, the Debtor asserts that although Power Washing Pro was awarded a $600,000 contract with Cooper Medical Center the month following his bankruptcy filing, his income with Power Washing Pro never changed!

[13] *See* TR from December 6, 2021 at 11:50 a.m. and 11:51 a.m.

[14] Again, the court fully incorporates herein Darlene's full post-trial submission concerning the transactions. Doc. No. 102, pp. 3-7.

[15] *See* TR from December 6, 2021 at 11:27 a.m.

testimony seems convenient, with its effect to make it impossible for the court to make a reasonable determination as to whether the Debtor has committed all of his projected disposable income under section 1325(b)(1)(B).

Another significant discrepancy between the Debtor's schedules and his testimony is the amount that the Debtor pays a month in rent and utilities to his landlord and to his girlfriend, Donna Guzzo, both of whom testified at the confirmation. According to their lease agreement, the Debtor is supposed to pay $2,000 a month in rent plus utilities. Both parties admitted that the Debtor never made a $2,000 payment.[16] Instead, as set forth in the Trustee's post-trial submission incorporating the testimony and exhibits from confirmation (Doc. No. 100-1), the Debtor paid an average of $1,375.25 per month in rental expense. The Debtor also testified, confirmed by Ms. Guzzo, that he has not actually paid any utilities yet since they plan to "reconcile" what he owes her at the end of the year.[17] But by the time of the confirmation hearing, the lease had expired, yet neither the rent amounts nor the utility expenses had been "reconciled" between them. The testimony and evidence did not support what the Debtor claims is his projected monthly disposable income—making it impossible for the court to make a reasonable determination as to whether the Debtor has committed all of his projected disposable income under section 1325(b)(1)(B).

In *In re Powers*, 554 B.R. 41, 57 (Bankr. N.D.N.Y. 2016), although the court denied confirmation of the debtor's plan on the basis of section 1325(a)(3) (plan has been proposed in good faith), the court found the debtor's facial inaccuracies on her schedules I and J to lack transparency, preventing "the Court from determining debtor's expenses with any precision where she presents a constantly moving target." That court noted that it appeared that "while debtors may freely amend their schedules in the interest of candor with the court, the nature and timing of debtor's amendments to her schedules invite[d] more questions than they answer[ed,]" and concluded that the debtor's expenses may have been manipulated in such a way to "use up" any increase in the debtor's disposable income. *See also In re Kinsale*, 617 B.R. 58 (Bankr. D. S.C. 2020). (court denied confirmation as the inconsistencies and omissions in Chapter 13 debtor's bankruptcy schedules and statements and the lack of a clear picture of debtor's financial position of kind required to allow court to determine whether debtor was complying with the Bankruptcy Code requirements, prevented the court from confirming proposed plan) and *In re Broder*, 607 B.R. 774, 780 (Bankr. D. Me. 2019) (court denied confirmation as debtor did not provide reliable financial information. The court also noted that the timing of the numerous amendments to bankruptcy schedules suggested that the debtor "tossed out" numbers to thwart a creditor's objections).

Here, the court is faced with a similar dilemma. The Debtor's testimony, schedules and amendments to his schedules invite more questions than they answer. The inconsistencies and omissions in the bankruptcy schedules and Debtor's testimony and lack of a clear picture of Debtor's financial position prevent the court from confirming the Plan. In short, there is a lack of reliable financial information and it seems the Debtor just tosses out numbers to see what sticks.

---

[16] *See* TR from December 6, 2021 at 11:37 a.m. *See also* 11:27 a.m. (Donna Guzzo's testimony stating that she had not received a single rent payment in the amount of $2,000 from the Debtor).

[17] *See* TR from December 6, 2021 at 11:36 a.m. *See also* 11: 27 a.m. (Donna Guzzo's testimony stating that she has not received a single utility payment from the Debtor from November 1, 2020 through the present).

It is evident that the Debtor has strategically testified to confuse the record and manipulate income, or truly does not know his true income and expenses. Or maybe a little of both. Either way, the Debtor has made it impossible for the court to make a reasonable determination as to whether the Debtor has committed all of his projected disposable income under section 1325(b)(1)(B)—which based upon the record and evidence presented, leads the court to conclude that he has not. Consequently, confirmation must be denied.

In her post-trial submission, the Trustee accurately provides the facts brought forth at trial and makes a valid argument as to what the Debtor's actual projected monthly disposable might be: approximately $2,900. *See* Doc. No. 100-1. This would yield a significant dividend to unsecured creditors. Likewise, in her post-trial submission, Darlene accurately provides the facts brought forth at trial but argues that the Debtor's actual income and expenses warrant a significant increase in monthly Plan payments, if not a 100% payment to unsecured creditors. *See* Doc. No. 102. The Debtor's post-trial submission, which attempts to corral the Debtor's inconsistent and implausible testimony, proclaims that the Plan complies with section 1325(b)(1)(B) and must be confirmed as is. *See* Doc. No. 104. It does not. All three positions, applying varying methods, effectively ask the court to fix the amount of the monthly plan payment. It cannot. Crucial to the court's determination under section 1325(b)(1)(B) is for the court to determine that "all" of the debtor's projected disposable income be contributed. However, the exhibits presented and the Debtor's testimony, whether purposeful or truly without comprehension of the facts, evidences that the Debtor does not know what his true income and expenses are, thereby preventing the court from determining what the projected disposable income is for purposes of section 1325(b)(1)(B). Having failed in this very first step, there is no need to, and in fact no way to, determine what the Debtor's projected disposable income is and what the proper Plan payment might be. The Debtor was unprepared, not credible in his understanding and provided insufficient proof of his income and expenses. To any extent that he did, Darlene and the Trustee were successful in challenging it. The Debtor's post-trial submission is unpersuasive. In the end, there simply is no way for the court to consider income or expenses, let alone those that are known or virtually certain, enabling the court to make a determination—even in its discretion. The Debtor failed to meet his initial burden and confirmation must be denied.

## CONCLUSION

As the court is unable to make a reasonable determination as to whether the Debtor has committed all of his projected disposable income under section 1325(b)(1)(B), confirmation is denied.

The Debtor has 14 days to show cause why his case should not be dismissed.

A separate order consistent with this Opinion has been entered together herewith.

/s/ Andrew B. Altenburg, Jr.
United States Bankruptcy Judge

Dated: February 8, 2022