UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| In Re: | Case No.: 20-21419-ABA |
| Charles A. Budd, Jr., | Chapter: 13 |
| Debtor. | Judge: Andrew B. Altenburg, Jr. |

## MEMORANDUM DECISION

This matter is before the court on the court's order denying confirmation and the court's subsequent Order to Show Cause why the Chapter 13 case of Charles A. Budd Jr. ("Debtor") should not be dismissed. Having considered the Debtor's response to Order to Show Cause, his proposed Third Modified Plan, and the responses of the Chapter 13 Trustee and the objecting creditor, the case will be dismissed.

## JURISDICTION AND VENUE

This matter before the court is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(L) and (O), and the court has jurisdiction pursuant to 28 U.S.C. § 1334, 28 U.S.C. § 157(a) and the Standing Order of Reference issued by the United States District Court for the District of New Jersey on July 23, 1984, as amended on September 18, 2012, referring all bankruptcy cases to the bankruptcy court. The following constitutes this court's findings of fact and conclusions of law as required by Federal Rule of Bankruptcy Procedure 7052.

## PROCEDURAL HISTORY

On August 2, 2021, the Debtor filed his Second Modified Chapter 13 Plan ("Second Plan"). (Doc. No. 69). The Chapter 13 Trustee (the "Trustee") filed objections to the Debtor's expenses for purposes of determining the Debtor's projected disposable income. (Doc. Nos. 73 and 88). Creditor Darlene Budd ("Darlene") also filed objections to confirmation of the Plan centering on the Debtor's purported projected disposable income. (Doc. Nos. 47 and 89). Because of the very contested nature of the case and alleged inaccuracies of information provided by the Debtor, a full plenary hearing was required. The court held a trial at which all parties participated and submitted their evidence. The court took testimony from the Debtor and witnesses Brian Budd and Donna Guzzo. For their day in court, no party relied on experts, nor any expert reports. At the close of trial, the court permitted the parties to submit post-trial briefs on the evidence presented. The parties made their submissions (Doc. Nos. 100, 102 and 104).

On February 8, 2022, the court issued its written Memorandum Decision (Doc. No. 105) (the "2/8 Decision")[1] finding that the Debtor had not met his burden of demonstrating what his monthly disposable income actually is, and consequently, the court could not reasonably determine whether he had committed all of his projected disposable income under section 1325(b)(1)(B). The court denied confirmation and in connection therewith, the court issued its order denying confirmation but gave the Debtor an opportunity to show cause why his case should not be dismissed ("OSC")[2]. (Doc. No. 106).

In timely response to the OSC, the Debtor filed an Application for Retention of Professional Baratz & Associates, P.A. as accountant and expert witness ("Accountant/Expert Application"). Debtor also filed his third modified plan ("Third Plan"). (Doc. No. 116). Finally, Debtor filed a certification in response to the court's OSC ("Debtor's Response") (Doc. No. 118).

On February 23, 2022, the court invited Darlene and the Trustee to file responses to the Debtor's Response. The Trustee timely filed a response to Debtor's Certification ("Trustee's Response"), (Doc. No. 125), and Darlene timely filed her response ("Darlene's Response"). (Doc. No. 126). No other submissions have been made. With all submissions in, the matter is now ripe for disposition.

## DISCUSSION

The Second Plan proposed payments of $600 a month for 60 months for a total of $36,000 in payments. With the bar date having passed, the undisputed amount of general unsecured claims in this case total $245,282. The Trustee's commission will exceed $3,000 and with multiple contested hearings, the Debtor's attorneys fees will far exceed the customary fee of $4,750 for chapter 13 cases, resulting in a diminished distribution, if any, to unsecured creditors.[3] Darlene is the largest unsecured creditor in the case. 2/8 Decision, p. 2.

It bears repeating that due to the objections of Darlene and the Trustee, confirmation of the Second Plan required the court to determine that section 1325(b)(1)(B) of the Bankruptcy Code was satisfied. *Id.* pp. 2-3. That section simply requires that "the plan provides that all of the debtor's projected disposable income to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan. 11 U.S.C.A. § 1325(b)(1)(B).

Darlene and the Trustee met their burden that the Second Plan did not satisfy section 1325(b)(1)(B). 2/8 Decision, pp. 3-7. It was demonstrated through multiple instances that the Debtor was not properly calculating his projected disposable income from his income and expenses

---

[1] *In Re: Charles A. Budd, Jr., Debtor.*, 20-21419-ABA, 2022 WL 385917 (Bankr. D.N.J. Feb. 8, 2022).

[2] No motion to alter or amend the OSC was filed under Fed. R. Bankr. P. 9023.

[3] Indeed, as evidenced by Debtor's counsel's latest fee application, (Doc. No. 121), counsel already has earned fees and expenses in excess of $24,000 and seeks further fees and expenses through 2/10/22 in excess of $6,000. Even this amount will go up. What is more, while a portion of these fees have been paid from the proceeds of the sale of the Debtor's residence, Debtor's counsel specifically acknowledges in its fee application that payment of its latest fees will reduce the amount to be paid to general unsecured creditors under the plan. (Doc. No. 121-1, ¶ 3.)

known or virtually known to him as set forth in the Supreme Court decision in *Hamilton v. Lanning*, 560 U.S. 505, 130 S. Ct. 2464, 177 L. Ed. 2d 23 (2010). 2/8 Decision, pp. 3-7. And while the confirmation hearing revealed that the Debtor was not credible and may himself not even know what his projected monthly disposable or actual income is, without doubt, his testimony directly contradicted his own schedules including showing that he is not paying some of the expenses he claims to pay for purposes of calculating his projected monthly disposable income. *Id*. pp. 5-7.

It was clear from the Debtor's own testimony, confirmed by witnesses friendly to him, that the Debtor does not have all the expenses he claims. For example, when questioned about the expenses listed on his Schedule J, the Debtor admitted that he uses a business to pay his cell phone, car insurance, and health insurance costs and that he was not actually personally paying these expenses. *Id*. p.5. Even then, it was discovered that the health insurance expenses listed were not the actual amount being paid. In addition, the information provided by the Debtor with regard to his rent and utilities expenses was significantly inaccurate. *Id.* p.6. Because accurate expenses are necessary for a determination of projected monthly disposable income, and the Debtor was not credible in his testimony about his income (and the evidence did not support it), the court could not determine the projected monthly disposable income. *Id.*

Ultimately, the court concluded:

. . . The Debtor's testimony, schedules and amendments to his schedules invite more questions than they answer. The inconsistencies and omissions in the bankruptcy schedules and Debtor's testimony and lack of a clear picture of Debtor's financial position prevent the court from confirming the Plan. In short, there is a lack of reliable financial information and it seems the Debtor just tosses out numbers to see what sticks. It is evident that the Debtor has strategically testified to confuse the record and manipulate income, or truly does not know his true income and expenses. Or maybe a little of both. Either way, the Debtor has made it impossible for the court to make a reasonable determination as to whether the Debtor has committed all of his projected disposable income under section 1325(b)(1)(B) — which based upon the record and evidence presented, leads the court to conclude that he has not. Consequently, confirmation must be denied.

In her post-trial submission, the Trustee accurately provides the facts brought forth at trial and makes a valid argument as to what the Debtor's actual projected monthly disposable might be: approximately $2,900. *See* Doc. No. 100-1. This would yield a significant dividend to unsecured creditors. Likewise, in her post-trial submission, Darlene accurately provides the facts brought forth at trial but argues that the Debtor's actual income and expenses warrant a significant increase in monthly Plan payments, if not a 100% payment to unsecured creditors. *See* Doc. No. 102. The Debtor's post-trial submission, which attempts to corral the Debtor's inconsistent and implausible testimony, proclaims that the Plan complies with section 1325(b)(1)(B) and must be confirmed as is. *See* Doc. No. 104. It does not. All three positions, applying varying methods, effectively ask the court to fix the amount of the monthly plan payment. It cannot. Crucial to the court's determination under section 1325(b)(1)(B) is for the court to determine that "all" of the debtor's projected disposable income be contributed. However, the exhibits

> presented and the Debtor's testimony, whether purposeful or truly without comprehension of the facts, evidences that the Debtor does not know what his true income and expenses are, thereby preventing the court from determining what the projected disposable income is for purposes of section 1325(b)(1)(B). Having failed in this very first step, there is no need to, and in fact no way to, determine what the Debtor's projected disposable income is and what the proper Plan payment might be. The Debtor was unprepared, not credible in his understanding and provided insufficient proof of his income and expenses. To any extent that he did, Darlene and the Trustee were successful in challenging it. The Debtor's post-trial submission is unpersuasive. In the end, there simply is no way for the court to consider income or expenses, let alone those that are known or virtually certain, enabling the court to make a determination—even in its discretion. The Debtor failed to meet his initial burden and confirmation must be denied.

2/8 Decision, pp. 6-7. The court then issued the OSC.

In response, the Debtor filed the Third Plan which provides for the same monthly payment of $600 but incredibly now shortens the applicable commitment period to 36 months resulting in a total plan payment of $21,600 – *a $14,400 reduction in plan payments under the Second Plan*.[4] In the Debtor's Response, the Debtor focuses on the portion of the court's 2/8 Decision about its inability to determine the income of the Debtor. The Debtor proposes that he is now in a position to have his 2021 tax returns prepared and with the assistance of an expert report, he will be able to show exactly what his 2021 income was. Debtor's Response, ¶¶ 5-10. The Accountant/Expert Application was filed in connection therewith. Absent from the Debtor's Response, or for that matter any amended schedules, was any reference to any or correction of the inaccurate expenses proven through the Debtor's own testimony at the confirmation hearing. In sum, the Debtor's response to the OSC is that he will proposes a new plan with the same monthly payment based upon the same amount of monthly income he previously unsuccessfully testified to but now he will have his expert confirm that information despite his testimony, that plan is proposed without correcting or accounting for the inaccurate expenses already proven by his own testimony, and now the Plan will provide for even less payments to the unsecured creditors.

The Trustee points out in her response that the appointment of the accountant/expert will not make the Debtor's previous testimony more credible. Trustee's Response, p.2. Sure, perhaps an account/expert can provide the court with a better picture of what the Debtor's *true* income is but the court is at a loss as to how an accountant/expert could assist the Debtor in overcoming his previous sworn testimony evidencing that he was not incurring the expenses he claimed to be making. Moreover, as the Trustee points out, the engagement letter issued to the Debtor submitted together with Accountant/Expert Application raises concern. That letter provides:

> We will prepare the returns from information that you will furnish to us. It is your responsibility to provide all the information including corrected Form 1099

---

[4] According to the Trustee, after payment of pending counsel fees, unsecured creditors will only collectively receive $13,285.66 under the Third Plan. Trustee's Response, p.1. But this does not consider other certain administrative claims that would further reduce the amount paid to unsecured creditors.

required for the preparation of complete and accurate returns. **We will not audit or otherwise verify the data you submit**, although we may ask you to clarify some of the information.

To the extent we render any services, it will be limited to those tasks we deem necessary for the preparation of the returns only. **Accordingly, our engagement cannot be relied upon to disclose errors, fraud, or other illegal acts that may exist**.

Accountant/Expert Application, p. 4 (emphasis added).

So, the accountant/expert will solely rely on information supplied to it by the Debtor. What evidentiary support could there be that was not available at the time of confirmation? How can the accountant/expert contradict the previous testimony as to expenses? The limitation in engagement also concerns the court because throughout confirmation the Debtor *consistently* stated that he relies on his accountant to tell him what his income is at the end of the year. So, who is relying on who? This, coupled by the fact that the Debtor, without the benefit of the expert he proposes to hire, has already determined that the correct monthly payment under the Third Plan will be $600 a month. The Debtor is not credible. With all this, the court can only conclude that the Debtor may manipulate the numbers as he sees fit.

There is also another issue with the Accountant/Expert Application. The Debtor filed it because the Debtor's projected disposable income was called into question, to render an expert report, and to prepare tax returns. Doc. No. 115. Interestingly, the engagement letter attached to the Accountant/Expert Application at page 10 of 11 is written to the Debtor *and his business*. If services are to be performed on behalf of the Debtor's business, then it is entirely appropriate for the application to be denied. Perhaps another simple error, perhaps not.

What is more, presumably, the Accountant/Expert Application is made under 11 U.S.C. § 327. However, "[u]nlike other chapters of the Bankruptcy Code, there is no statutory provision for the employment of professionals in a Chapter 13 case." *In re Demeza*, 582 B.R. 868, 875 (Bankr. M.D. Pa. 2018). That is because a debtor "is neither a trustee nor one on whom the Code imposes the functions and duties of a trustee. A chapter 13 debtor, unlike debtors under chapters 11 and 12, is not charged with 'perform[ing] all the functions and duties ... of a trustee serving in a case under this chapter.' 11 U.S.C. § 1107(a); *see also* 11 U.S.C. § 1203 ('a debtor in possession ... shall perform all the functions and duties ... of a trustee serving in a case under chapter 11'). . . . As a result, an individual chapter 13 debtor, like [the debtor], is not a 'trustee' for purposes of § 327." *In re Jones*, 505 B.R. 229, 231 (Bankr. E.D. Wis. 2014). *See also In re Roggio,* 577 B.R. 457, 458 (Bankr. M.D. Pa. 2017, *as corrected*, Jan. 29, 2018) ("'Our Circuit Court of Appeals, however, has made it clear that powers reserved for a trustee cannot be exercised by a Chapter 13 debtor.'" (quoting *In re Knapper*, 407 F.3d 573, 583 (3rd Cir. 2005)); *In re Tirado*, 329 B.R. 244, 248 (Bankr. E.D. Wis. 2005) ("§ 327 of the Bankruptcy Code simply does not apply to chapter 13 debtors who seek to employ professionals. The requirements of § 327 would be triggered by a chapter 13 trustee's application to employ a professional, but in this case, [the professional's] services were rendered to the Debtor, not the Trustee.). While the court recognizes that other courts have concluded (and this court might agree) that a Chapter 13 debtor-in-possession may have the authority and duty to file an application to retain a professional in certain situations, *In re Goines*, 465 B.R. 704, 706 (Bankr. N.D. Ga. 2012), here, where the Debtor is seeking to retain an expert

witness solely for his *own benefit*, i.e., to overcome his failure to meet his burden at confirmation, and in addition, to have that expert witness compensated *from the estate* thereby resulting in a further reduction of distribution, if any, to unsecured creditors in this case, is not such a situation.[5] Certainly, the expert witness's retention is not necessary to the trustee or in any way in the best interests of the estate as required by section 327. For these reasons, and the others set forth in this opinion, the Court would not approve the Debtor's retention of the expert witness as a professional on behalf the estate, and particularly the payment of that accountant by the estate, as not authorized by the Bankruptcy Code and not providing any benefit to the estate.

In her response, in addition to agreeing with the Trustee, Darlene argues that the Debtor had his day in court, was unprepared, and is "clearly trying to get a second bite of the apple." Darlene's Response, p.1. And since he knew early on that she and the Trustee objected to his income and expenses, he should have been ready to accurately provide his income and expenses in order to confirm his plan. *Id.* In the end, she says, "[t]he debtor should not profit from his lackadaisical and flippant approach to the court hearing." *Id*. She asks the court to honor the law of the case doctrine.

As noted by the court in *In re Broadstripe, LLC*, 435 B.R. 245 (Bankr. D. Del. 2010):

> The doctrine of law of the case is as follows: once a matter has been addressed in a procedurally appropriate way by a court, it is generally held to be the law of that case and will not be disturbed by that court unless compelling reason to do so appears. This doctrine is one of both fundamental fairness and judicial efficiency. "The law of the case doctrine provides that when a court actually decides a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case. However, that doctrine only applies to issues that were actually litigated and decided by the court." Law of the case directs a court's discretion, it does not limit the tribunal's power. "The law of the case doctrine does not act as an absolute bar on re-litigation (in contrast to the doctrines of claim and issue preclusion). Rather the law of the case doctrine merely directs the court's discretion not to rehear matters ad nauseam."

*Id* at 255 (footnotes omitted). "Under the law of the case doctrine, when a court decides upon a rule of law[,] that decision should continue to govern the same issues in subsequent stages of the same case." *In re Titus*, 566 B.R. 755, 770 (Bankr. W.D. Pa. 2017), *judgment entered,* 10-23668-TPA, 2017 WL 1247300 (Bankr. W.D. Pa. Mar. 31, 2017), and *aff'd sub nom. Titus v. Shearer for Chapter 7 Bankr. Estate of Titus*, AP 10-2338, 2017 WL 5467712 (W.D. Pa. Nov. 14, 2017), *aff'd sub nom. In re Titus*, 916 F.3d 293 (3d Cir. 2019). Law of the case applies equally to legal and factual findings. *In re Jamuna Real Estate, LLC*, 392 B.R. 149, 169 (Bankr. E.D. Pa. 2008) (J. Raslavich). "A leading commentator explains that '[i]f an attempt is made to press the same fact issue for a second time on an unchanged record, law-of-the-case reluctance approaches maximum force.'" *Id.* (quoting 18B Wright, Miller and Cooper, *Federal Practice & Procedure:* Juris.2d 4478.5 (2002)). *See In re Landmark Distributors, Inc.*, 189 B.R. 290, 292 (Bankr. D.N.J. 1995) (parties agreed that findings by trier of fact constituted law of the case).

---

[5] As noted above, with only $13,285.66 left under the Third Plan, appointment of the accountant/expert would surely result in a significant reduction in payments to unsecured creditors.

Here, the Second Plan was set up for confirmation and the Trustee and Darlene filed their objections. Without doubt, the Debtor's projected monthly disposable income was challenged. Monthly disposable income requires a determination of the debtor's current monthly income, less reasonably necessary expenses, multiplied by the length of the applicable commitment period. *Hamilton v. Lanning*, 560 U.S. 505, 130 S. Ct. 2464, 177 L. Ed. 2d 23 (2010). There was no question that the Debtor's income AND expenses were called into question. Confirmation took place over two days almost a month apart from each other. There was time to prepare. With all of this, the Debtor provided no evidence to support his income, instead, providing confused and misleading statements. As to expenses, the Debtor testified that he was not paying the expenses as represented. Even if the Debtor could succeed in convincing the court that his monthly income was what he claimed it to be, the fact remains that his monthly expenses, per his own testimony and corroborated by witnesses, were inaccurate naturally leading to an increase in monthly payments. As pointed out by the Trustee, even taking the Debtor's testimony as true with regard to his monthly income together with his own admissions as to what his actual monthly expenses are, the monthly disposable income for purposes of 11 U.S.C.A. § 1325(b) would be in the $2,900 range – not the $600 the Debtor has stuck to. The Debtor and witnesses' testimony with regard to his expenses was not challenged nor addressed in the Debtor's Response or any amended schedules. The expenses cannot change in light of the testimony, unless of course, the Debtor manipulates the numbers to make the proposed Third Plan work. There is no compelling reason why not to invoke the law of the case when it comes to the court's legal and factual findings.

Indeed, the court might have been compelled to give the Debtor another bite at the apple if the Debtor acknowledged his mistakes and attempted to confirm a new plan more consistent with the court's earlier findings. But instead, the Debtor chose a different route, a route which now unbelievably tries to pay creditors even less than what he originally proposed, and still using an income number totally unsupported by the evidence (and at this point any expert), with claimed expenses in direct conflict with his own admissions. The Debtor had his day in court. Despite being keenly aware that his projected monthly disposable income was being challenged, he came to court ill-prepared and ultimately, was not credible. The Third Plan certainly does not cure this, and no expert can overcome the Debtor's admissions about his monthly expenses. Application of the law of the case doctrine is warranted. The Debtor, through the Third Plan, is attempting to press the same fact issue for a second time—$600 being the proper number for his projected monthly disposable income—while completely ignoring the facts about his expenses that have already been decided. On his own testimony, the Debtor's expenses are known or virtually known to him for purposes of determination/satisfaction of section 1325(b)(1)(B). The record remains unchanged, and no expert, particularly where the scope of that expert's engagement is limited and the debtor can manipulate the numbers, can change the record with regard to the Debtor's admitted expenses.

## CONCLUSION

The court finds that the Debtor's Response to the OSC is deficient and the Debtor has provided nothing warranting a finding that this case should continue. Confirmation is denied and the case is dismissed. A separate order consistent with this Opinion has been entered together herewith.

/s/ Andrew B. Altenburg, Jr.

Dated: March 4, 2022        United States Bankruptcy Judge